# EXHIBIT C

FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

2005 SEP -1 P 3: 38

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05 CV 675 (TSE/BRP) |
| | ) | |
| v. | ) | |
| | ) | |
| COBALT PHARMACEUTICALS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND
## COUNTERCLAIMS OF COBALT PHARMACEUTICALS INC.

Defendant, Cobalt Pharmaceuticals Inc. ("Cobalt"), for its Answer, Affirmative

Defenses, and Counterclaims to the Complaint of Plaintiff Merck & Co., Inc. ("Merck"), states

as follows:

## THE PARTIES

1.    Plaintiff Merck is a corporation incorporated under the laws of New Jersey with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889.

**ANSWER:** Admitted.

2.    On information and belief, Defendant Cobalt Pharmaceuticals, Inc. ("Cobalt") is a Canadian corporation incorporated under the laws of Ontario, Canada, with its principal office at 6500 Kitimat Road, Mississauga, Ontario, Canada, L5N 2B8.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

3.    This action arises under the patent laws of the United States of America and jurisdiction is founded on Title 28, United States Code §§ 1331 and 1338(a).

**ANSWER:** Paragraph 3 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that this action purports to arise under the patent laws of the United States and that subject matter jurisdiction is proper. Cobalt denies the remaining averments of Paragraph 3.

4.    This Court has personal jurisdiction over Cobalt by virtue of, *inter alia*, Cobalt's consent to jurisdiction in this district. Specifically, Cobalt sent a letter dated April 28, 2005, to Merck ("Notification Letter") notifying Merck that Cobalt had filed a patent certification pursuant to § 505(j)(2) of the Federal Food, Drug and Cosmetic Act, as described more fully below. Pursuant to 21 C.F.R. § 314.95(c)(7), Cobalt was required to provide within the Notification Letter the name and address of an agent in the United States authorized to accept service of process for Cobalt. Cobalt thus identified Conrad M. Shumadine, Willcox & Savage, One Commercial Place, Suite 1800, Norfolk, Virginia 23510 as its agent in the Eastern District of Virginia to accept service of process.

**ANSWER:** Paragraph 4 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that personal jurisdiction is proper for this action only by virtue of Cobalt's Notification Letter consenting to jurisdiction in this District. Cobalt further admits that its Notification Letter identified Conrad M. Shumadine, Willcox & Savage, One Commercial Place, Suite 1800, Norfolk, Virginia 23510, as Cobalt's agent in this District to accept service of process for Cobalt limited to commencement of an action based on Cobalt's Notification Letter. Cobalt denies the remaining averments of Paragraph 4.

5.    Venue is also proper in this judicial district by virtue of Cobalt's consent and pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**ANSWER:** Paragraph 5 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that venue is proper in this District for purposes of this action only. Cobalt denies the remaining averments of Paragraph 5.

## BACKGROUND

6.    On October 25, 1994, United States Letters Patent No. 5,358,941 ("the '941 patent"), entitled DRY MIX FORMULATION FOR BISPHOSPHONIC ACIDS WITH

2

LACTOSE, duly and legally issued to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare. The '941 patent is currently set to expire on December 2, 2012. The '941 patent discloses and claims novel pharmaceutical compositions of bisphosphonic acids and salts thereof, which are useful in the treatment and prevention of diseases including osteoporosis, Paget's disease, malignant hypercalcemia, and metastatic bone disease. A copy of the '941 patent is attached to this Complaint as Exhibit 1.

**ANSWER:** Paragraph 6 contains legal conclusions to which no answer is

required. To the extent an answer is required, Cobalt admits that the United States Patent and

Trademark Office ("PTO") issued U.S. Patent No. 5,358,941 ("the '941 patent"), entitled "DRY

MIX FORMULATION FOR BISPHOSPHONIC ACIDS WITH LACTOSE," to Simon R.

Bechard, Kenneth A. Kramer, and Ashok V. Katdare on October 25, 1994; that the subject

matter of the '941 patent purportedly is set forth in the specification and claims of the '941

patent; and that a copy of the '941 patent is attached to the Complaint as Exhibit 1. Cobalt

denies that the '941 patent was "duly and legally issued" and further denies that Merck has fully

described or accurately characterized the subject matter and claims of the '941 patent. Cobalt

denies the remaining averments of Paragraph 6.

7.    On October 28, 1997, United States Letters Patent No. 5,681,590 ("the '590 patent"), entitled DRY MIX FORMULATION FOR BISPHOSPHONIC ACIDS, duly and legally issued to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare. The '590 patent is currently set to expire on December 2, 2012. The '590 patent discloses and claims novel pharmaceutical compositions and novel processes for manufacturing compositions of bisphosphonic acids and salts thereof, which are useful in the treatment and prevention of diseases including osteoporosis, Paget's disease, malignant hypercalcemia, and metastatic bone disease. A copy of the '590 patent is attached to thus Complaint as Exhibit 2.

**ANSWER:** Paragraph 7 contains legal conclusions to which no answer is

required. To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No.

5,681,590 ("the '590 patent"), entitled "DRY MIX FORMULATION FOR BISPHOSPHONIC

ACIDS," to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare on October 28, 1997;

that the subject matter of the '590 patent purportedly is set forth in the specification and claims

of the '590 patent; and that a copy of the '590 patent is attached to the Complaint as Exhibit 2.

Cobalt denies that the '590 patent was "duly and legally issued" and further denies that Merck

has fully described or accurately characterized the subject matter and claims of the '590 patent.

Cobalt denies the remaining averments of Paragraph 7.

8.    On December 15, 1998, United States Letters Patent No. 5,849,726 ("the '726 patent"), entitled ANHYDROUS ALENDRONATE MONOSIDUM [sic] SALT FORMULATIONS, duly and legally issued to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and J. Eric Thies.  The '726 patent is currently set to expire on June 6, 2015.  The '726 patent discloses and claims novel pharmaceutical compositions of anhydrous 4-amino-l-hydroxy-butylidene-1,l-bisphosphonic acid monosodium salt, as well as novel methods for treating and preventing bone loss with these compositions.  A copy of the '726 patent is attached to this Complaint as Exhibit 3.

ANSWER:  Paragraph 8 contains legal conclusions to which no answer is

required.  To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No.

5,849,726 ("the '726 patent"), entitled "ANHYDROUS ALENDRONATE MONOSODIUM

SALT FORMULATIONS," to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and

J. Eric Thies on December 15, 1998; that the subject matter of the '726 patent purportedly is set

forth in the specification and claims of the '726 patent; and that a copy of the '726 patent is

attached to the Complaint as Exhibit 3.  Cobalt denies that the '726 patent was "duly and legally

issued" and further denies that Merck has fully described or accurately characterized the subject

matter and claims of the '726 patent.  Cobalt denies the remaining averments of Paragraph 8.

9.    On December 28, 1999, United States Letters Patent No. 6,008,207 ("the '207 patent"), entitled ANHYDROUS ALENDRONATE MONOSIDUM [sic] SALT FORMULATIONS, duly and legally issued to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and J. Eric Thies.  The '207 patent is currently set to expire on June 6, 2015.  The '207 patent discloses and claims novel methods for administering anhydrous alendronate monosodium salt formulations.  A copy of the '207 patent is attached to this Complaint as Exhibit 4.

ANSWER:  Paragraph 9 contains legal conclusions to which no answer is

required.  To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No.

6,008,207 ("the '207 patent"), entitled "ANHYDROUS ALENDRONATE MONOSODIUM

4

SALT FORMULATIONS," to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and

J. Eric Thies on December 28, 1999; that the subject matter of the '207 patent purportedly is set

forth in the specification and claims of the '207 patent; and that a copy of the '207 patent is

attached to the Complaint as Exhibit 4.  Cobalt denies that the '207 patent was "duly and legally

issued" and further denies that Merck has fully described or accurately characterized the subject

matter and claims of the '207 patent.  Cobalt denies the remaining averments of Paragraph 9.

> 10.    On July 18, 2000, United States Letters Patent No. 6,090,410 ("the '410
> patent"), entitled ANHYDROUS ALENDRONATE MONOSIDUM [sic] SALT
> FORMULATIONS, duly and legally issued to Simon R. Bechard, Kenneth A. Kramer, and
> Ashok V. Katdare.  The '410 patent is currently set to expire on December 2, 2012.  The '410
> patent discloses and claims novel pharmaceutical compositions of bisphosphonic acids and
> salts thereof, which are useful in the treatment and prevention of diseases including
> osteoporosis, Paget's disease, malignant hypercalcemia, and metastatic bone disease.  A copy
> of the '410 patent is attached to this Complaint as Exhibit 5.

**ANSWER:** Paragraph 10 contains legal conclusions to which no answer is

required.  To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No.

6,090,410 ("the '410 patent"), entitled "DRY MIX FORMULATION FOR BISPHOSPHONIC

ACIDS," to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare on July 18, 2000;

that the subject matter of the '410 patent purportedly is set forth in the specification and claims

of the '410 patent; and that a copy of the '410 patent is attached to the Complaint as Exhibit 5.

Cobalt denies that the '410 patent was "duly and legally issued" and further denies that Merck

has fully described or accurately characterized the subject matter and claims of the '410 patent.

Cobalt denies the remaining averments of Paragraph 10.

> 11.    On November 30, 1999 United States Letters Patent No. 5,994,329 (the
> "'329 patent") duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora, II, and John
> Yates entitled METHOD FOR INHIBITING BONE RESORPTION.  The '329 patent is
> currently set to expire on July 17, 2018.  The '329 patent discloses and claims methods for
> inhibiting bone resorption in mammals while minimizing the occurrence of or potential for
> adverse gastrointestinal effects, and pharmaceutical compositions and kits for carrying out
> these therapeutic methods.  A copy of the '329 patent is attached to this Complaint as Exhibit
> 6.

**ANSWER:** Paragraph 11 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No. 5,994,329 ("the '329 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates on November 30, 1999; that the subject matter of the '329 patent purportedly is set forth in the specification and claims of the '329 patent; and that a copy of the '329 patent is attached to the Complaint as Exhibit 6. Cobalt denies that the '329 patent was "duly and legally issued" and further denies that Merck has fully described or accurately characterized the subject matter and claims of the '329 patent. Cobalt denies the remaining averments of Paragraph 11.

12. On January 18, 2000, United States Letters Patent No. 6,015,801 (the "'801 patent") duly and legally issued to Anastasia G. Daifotis, John Yates, and Arthur C. Santora, II entitled METHOD OF INHIBITING BONE RESORPTION. The '801 patent is currently set to expire on July 17, 2018. The '801 patent discloses and claims methods for inhibiting bone resorption in mammals while minimizing the occurrence of or potential for adverse gastrointestinal effects, and pharmaceutical compositions and kits for carrying out these therapeutic methods. A copy of the '801 patent is attached to this Complaint as <u>Exhibit 7</u>.

**ANSWER:** Paragraph 12 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No. 6,015,801 ("the '801 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates on January 18, 2000; that the subject matter of the '801 patent purportedly is set forth in the specification and claims of the '801 patent; and that a copy of the '801 patent is attached to the Complaint as Exhibit 7. Cobalt denies that the '801 patent was "duly and legally issued" and further denies that Merck has fully described or accurately characterized the subject matter and claims of the '801 patent. Cobalt denies the remaining averments of Paragraph 12.

13. On May 1, 2001, United States Letters Patent No. 6,225,294 B1 ("the '294 patent") duly and legally issued to Anastasia G. Daifotis, Arthur C. Santora, II and John

6

Yates entitled METHOD FOR INHIBITING BONE RESORPTION. The '294 patent is currently set to expire July 17, 2018. The '294 patent discloses and claims methods for inhibiting bone resorption in mammals while minimizing the occurrence of or potential for adverse gastrointestinal effects, and pharmaceutical compositions and kits for carrying out these therapeutic methods. A copy of the '294 patent is attached to this Complaint as <u>Exhibit 8</u>.

**ANSWER:** Paragraph 13 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that the PTO issued U.S. Patent No. 6,225,294 B1 ("the '294 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates on May 1, 2001; that the subject matter of the '294 patent purportedly is set forth in the specification and claims of the '294 patent; and that a copy of the '294 patent is attached to the Complaint as Exhibit 8. Cobalt denies that the '294 patent was "duly and legally issued" and further denies that Merck has fully described or accurately characterized the subject matter and claims of the '294 patent. Cobalt denies the remaining averments of Paragraph 13.

14.     Merck is the owner through assignment of the '941, '590, '726, '207, '410, '329, '801 and '294 patents. Merck also owns an approved New Drug Application (NDA No. 20-560) for alendronate sodium tablets that are sold under its trademark FOSAMAX®.

**ANSWER:** Cobalt admits that the records of the PTO and/or the cover pages of the patents-in-suit appear to identify Merck as the assignee of the '941, '590, '726, '207, '410, '329, '801, and '294 patents. Cobalt further admits that the records of the United States Food and Drug Administration ("FDA") appear to identify Merck as the holder of NDA No. 20-650 for alendronate sodium tablets marketed under the brand-name FOSAMAX®. Cobalt denies the remaining averments of Paragraph 14.

15.     The publication *Approved Drug Products with Therapeutic Equivalence Evaluations* ("the Orange Book") identifies drug products approved on the basis of safety and effectiveness by the Food and Drug Administration ("FDA") under the Federal Food, Drug, and Cosmetic Act. Merck listed the '941, '590, '726, '207, '410, '329, '801 and '294 patents, among others, in the Orange Book for its FOSAMAX® tablets.

**ANSWER:** Paragraph 15 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that the drug approval and listing requirements are fully set forth in the applicable provisions of the Federal Food, Drug, and Cosmetic Act and FDA's implementing regulations. Cobalt denies that Merck has fully described or accurately characterized such requirements. Cobalt admits that FDA has listed the '941, '590, '726, '207, '410, '329, '801, and '294 patents in FDA's publication entitled *Approved Drug Products With Therapeutic Equivalence Evaluations*, which is also known as the "Orange Book," in connection with FOSAMAX®. Cobalt denies that such patents are valid and/or properly listed in the Orange Book. Cobalt denies the remaining averments of Paragraph 15.

16.    The FDA granted a six-month period of market exclusivity beyond the patent terms for Merck's FOSAMAX® drug product due to the timely submission and acceptance of pediatric studies pursuant to 21 U.S.C. § 355a(c). This six-month period is also listed in the Orange Book. The FDA may therefore not approve to market generic versions of Merck's FOSAMAX® tablets until six months after the expiration dates of each of the '941, '590, '726, '207, '410, '329, '801 and '294 patents. The six-month "pediatric exclusivity period" expires on June 2, 2013 for the '941 patent, June 2, 2013 for the '590 patent, December 6, 2015 for the '726 patent, December 6, 2015 for the '207 patent, June 2, 2013 for the '410 patent, January 17, 2019 for the '329 patent, January 17, 2019 for the '801 patent and January 17, 2019 for the '294 patent. The FDA also may not approve to market generic versions of Merck's FOSAMAX® tablets until the expiration of all other patents and the subsequent pediatric exclusivity period listed in the Orange Book.

**ANSWER:** Paragraph 16 contains legal conclusions to which no answer is required. To the extent an answer is required, Cobalt admits that certain requirements for what is referred to as pediatric exclusivity are set forth in 21 U.S.C. § 355a(c). Cobalt denies that Merck has fully described or accurately characterized such requirements. Cobalt further admits that FDA lists pediatric exclusivity data in the Orange Book. Cobalt denies that Merck has fully described or accurately characterized the pediatric exclusivity data for FOSAMAX® tablets. Cobalt denies the remaining averments of Paragraph 16.

8

17.    On information and belief, an Abbreviated New Drug Application (ANDA 76-984) has been filed on behalf of Cobalt, including a certification under Title 21, United States Code § 355(j)(2) with the FDA for 35 mg, 40 mg and 70 mg alendronate sodium tablets. Cobalt's ANDA 76-984 allegedly contains a certification of noninfringement of the '941, '590, '726, '207, '410, '329, '801 and '294 patents. Notice of that certification, but not the certification, was transmitted to Merck on or after April 28, 2005.

**ANSWER:** Admitted.

18.    On information and belief, Cobalt filed ANDA 76-984 because it seeks to enter the market that FOSAMAX® pharmaceutical products have created due to their benefits and advantages.

**ANSWER:** Denied.

## COUNT I

19.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully set forth herein.

20.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '941 patent, before the expiration of the '941 patent. On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

21.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '941 patent, it was aware of the existence of the '941 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '941 patent prior to filing ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 21.

22.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '941 patent.

**ANSWER:** Denied.

9

23.    On information and belief, the [sic] Cobalt's infringement of the '941 patent was and is willful.

**ANSWER:** Denied.

24.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT II

25.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully set forth herein.

26.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '590 patent, before the expiration of the '590 patent. On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271 (e) (2)(A).

**ANSWER:** Denied.

27.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '590 patent, it was aware of the existence of the '590 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '590 patent prior to filing ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 27.

28.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '590 patent.

**ANSWER:** Denied.

29.    On information and belief, Cobalt's infringement of the '590 patent was and is willful.

**ANSWER:** Denied.

10

30.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT III

31.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully

set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully

set forth herein.

32.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '726 patent, before the expiration of the '726 patent. On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

33.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '726 patent, it was aware of the existence of the '726 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '726 patent prior to filing

ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 33.

34.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '726 patent.

**ANSWER:** Denied.

35.    On information and belief, the [sic] Cobalt's infringement of the '726 patent was and is willful.

**ANSWER:** Denied.

36.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

11

**ANSWER:** Denied.

## COUNT IV

37.     Each of the preceding paragraphs 1 to 18 is incorporated as if fully

set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully

set forth herein.

38.     Cobalt submitted ANDA 76-984 in order to obtain approval under the
Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale
of a drug product the use of which is claimed in the '207 patent, before the expiration of the
'207 patent. On information and belief, Cobalt committed an act of infringement under 35
U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

39.     On information and belief, when Cobalt filed ANDA 76-984 seeking
approval to market alendronate sodium tablets before the expiration of the '207 patent, it was
aware of the existence of the '207 patent and that the filing of ANDA 76-984 constituted an act
of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '207 patent prior to filing

ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 39.

40.     On information and belief, Cobalt acted without a reasonable basis for a
good faith belief that it would not be liable for infringing the '207 patent.

**ANSWER:** Denied.

41.     On information and belief, the [sic] Cobalt's infringement of the '207
patent was and is willful.

**ANSWER:** Denied.

42.     On information and belief, as and to the extent Cobalt committed any
infringing act with respect to alendronate other than those acts expressly exempted by 35
U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT V

43.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully set forth herein.

44.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '410 patent, before the expiration of the '410 patent. On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

45.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '410 patent, it was aware of the existence of the '410 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '410 patent prior to filing ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 45.

46.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '410 patent.

**ANSWER:** Denied.

47.    On information and belief, Cobalt's infringement of the '410 patent was and is willful.

**ANSWER:** Denied.

48.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT VI

49.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully set forth herein.

50.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '329 patent, before the expiration of the '329 patent. On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

51.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '329 patent, it was aware of the existence of the '329 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '329 patent prior to filing

ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 51.

52.    On information and belief, Cobalt's infringement of the '329 patent was and is willful.

**ANSWER:** Denied.

53.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '329 patent.

**ANSWER:** Denied.

54.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT VII

55.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully set forth herein.

14

56.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '801 patent, before the expiration of the '801 patent.  On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

**ANSWER:** Denied.

57.    On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '801 patent, it was aware of the existence of the '801 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '801 patent prior to filing

ANDA No. 76-984.  Cobalt denies the remaining averments of Paragraph 57.

58.    On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '801 patent.

**ANSWER:** Denied.

59.    On information and belief, Cobalt's infringement of the '801 patent was and is willful.

**ANSWER:** Denied.

60.    On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## COUNT VIII

61.    Each of the preceding paragraphs 1 to 18 is incorporated as if fully set forth.

**ANSWER:** Cobalt re-asserts its responses to Paragraphs 1 through 18 as if fully

set forth herein.

62.    Cobalt submitted ANDA 76-984 in order to obtain approval under the Federal Food, Drug, and Cosmetic Act to engage in the commercial manufacture, use, or sale of a drug product the use of which is claimed in the '294 patent, before the expiration of the '294 patent.  On information and belief, Cobalt committed an act of infringement under 35 U.S.C. § 271(e)(2)(A).

15

**ANSWER:** Denied.

63.     On information and belief, when Cobalt filed ANDA 76-984 seeking approval to market alendronate sodium tablets before the expiration of the '294 patent, it was aware of the existence of the '294 patent and that the filing of ANDA 76-984 constituted an act of infringement of that patent.

**ANSWER:** Cobalt admits that it was aware of the '294 patent prior to filing

ANDA No. 76-984. Cobalt denies the remaining averments of Paragraph 63.

64.     On information and belief, Cobalt acted without a reasonable basis for a good faith belief that it would not be liable for infringing the '294 patent.

**ANSWER:** Denied.

65.     On information and belief, Cobalt's infringement of the '294 patent was and is willful.

**ANSWER:** Denied.

66.     On information and belief, as and to the extent Cobalt committed any infringing act with respect to alendronate other than those acts expressly exempted by 35 U.S.C. § 271(e)(1), such infringement was willful.

**ANSWER:** Denied.

## REQUESTED RELIEF

67.     Plaintiff Merck respectfully seeks the following relief:

a.     That judgment be entered that Cobalt infringed the '941, '590, '726, '207, '329, '801, '294 and '410 patents by submitting ANDA 76-984;

b.     That a permanent injunction be issued under 35 U.S.C. § 271(e) restraining or enjoining Cobalt, its officers, agents or attorneys and employees, and those acting in privity or concert with them, from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any therapeutic composition, and/or method of use covered by the '941, '590, '726, '207, '329, '801, '294 and '410 patents for the full term thereof, including the terms of other patents and the term of the pediatric exclusivity period listed in the Orange Book for Merck's 5 mg, 10 mg, 35 mg, 40 mg, and 70 mg FOSAMAX® tablets, and from inducing or contributing to such activities;

c.     That an order be issued under 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of ANDA 76-984 be a date which is not earlier than the last to expire of the asserted patents, including the terms of other patents and the term of the pediatric

16

exclusivity period listed in the Orange Book for Merck's 5 mg, 10 mg, 35 mg, 40 mg, and 70 mg FOSAMAX® tablets;

        d.    That judgment be entered that Defendant Cobalt willfully and deliberately infringed the '941, '590, '726, '207, '329, '801, '294 and '410 patents;

        e.    That this is an exceptional case under 35 U.S.C. § 285, and that judgment be entered for costs and reasonable attorneys fees to be awarded to Merck; and

        f.    That this Court award such other and further relief as the Court may deem proper under the circumstances.

        **ANSWER:**    Cobalt denies that Merck is entitled to the relief requested or to any relief whatsoever, and prays for judgment in its favor dismissing this action with prejudice and awarding Cobalt its attorneys' fees and costs for this action pursuant to 35 U.S.C. § 285, and such other and further relief as this Court may deem just and proper. Cobalt further denies all remaining averments not specifically admitted herein.

## SEPARATE DEFENSES

### First Defense

        The manufacture, use, sale, offer for sale, or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '941, '590, '726, '207, '329, '801, '294 and/or '410 patents.

### Second Defense

        The claims of the '941, '590, '726, '207, '329, '801, '294 and/or '410 patents are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

### Third Defense

Merck is collaterally estopped from asserting the validity of the '329 patent against Cobalt by virtue of the final decision of the United States Court of Appeals for the Federal Circuit in *Merck & Co. v. Teva Pharmaceuticals, USA, Inc.*, 395 F. 3d 1364 (Fed. Cir. 2005), *petition for rehearing and rehearing en banc denied*, 405 F.3d 1338 (Fed. Cir. 2005), which invalidated the relevant claims of that patent.

### Fourth Defense

The Complaint fails to state a claim upon which relief can be granted.

### Fifth Defense

Merck's claims for willful infringement fail to state a claim upon which relief can be granted.

### Sixth Defense

Any additional defenses or counterclaims that discovery may reveal.

### COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff, Cobalt Pharmaceuticals Inc. ("Cobalt"), for its Counterclaims against Plaintiff/Counterclaim-Defendant Merck & Co., Inc. ("Merck"), alleges as follows:

### The Parties

1.     Cobalt is a corporation duly organized and existing under the laws of Canada, having its principal place of business at 6500 Kitimat Road, Mississauga, Ontario, Canada, L5N 2B8.

18

2.     Merck is a company organized and existing under the laws of New Jersey, having an office and place of business at One Merck Drive, Whitehouse Station, New Jersey, 08889.

### Jurisdiction and Venue

3.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Merck because Merck has availed itself of the rights and privileges of this forum by suing Cobalt in this District, and because Merck conducts substantial business in, and has regular and systematic contact with, this District.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b).

### Patents-in-Suit

7.     On October 25, 1994, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,358,941 ("the '941 patent"), entitled "DRY MIX FORMULATION FOR BISPHOSPHONIC ACIDS WITH LACTOSE," to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare.

8.     On October 28, 1997, the PTO issued U.S. Patent No. 5,681,590 ("the '590 patent"), entitled "DRY MIX FORMULATION FOR BISPHOSPHONIC ACIDS," to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare.

9.     On December 15, 1998, the PTO issued U.S. Patent No. 5,849,726 ("the '726 patent"), entitled "ANHYDROUS ALENDRONATE MONOSODIUM SALT

19

FORMULATIONS," to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and J. Eric Thies.

10.    On December 28, 1999, the PTO issued U.S. Patent No. 6,008,207 ("the '207 patent"), entitled "ANHYDROUS ALENDRONATE MONOSODIUM SALT FORMULATIONS," to Gerald S. Brenner, Drazen Ostovic, Earl R. Oberholtzer, Jr., and J. Eric Thies.

11.    On July 18, 2000, the PTO issued U.S. Patent No. 6,090,410 ("the '410 patent"), entitled "DRY MIX FORMULATION FOR BISPHOSPHONIC ACIDS," to Simon R. Bechard, Kenneth A. Kramer, and Ashok V. Katdare.

12.    On November 30, 1999, the PTO issued U.S. Patent No. 5,994,329 ("the '329 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates.

13.    On January 18, 2000, the PTO issued U.S. Patent No. 6,015,801 ("the '801 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates.

14.    On May 1, 2001, the PTO issued U.S. Patent No. 6,225,294 B1 ("the '294 patent"), entitled "METHOD FOR INHIBITING BONE RESORPTION," to Anastasia G. Daifotis, Arthur C. Santora, II, and A. John Yates.

15.    Merck purports and claims to own, and have the right to enforce, the '941, '590, '726, '207, '329, '801, '294 and '410 patents.

16.    On June 8, 2005, Merck sued Cobalt in this District alleging infringement of the '941, '590, '726, '207, '329, '801, '294 and '410 patents under 35 U.S.C. § 271(e)(2)(A).

<u>Count I</u>
**(Declaratory Judgment of Non-Infringement of the '941 Patent)**

17.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-16 as if fully set forth herein.

18.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '941 patent.

19.    The manufacture, use, sale, offer for sale, or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '941 patent.

20.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '941 patent.

<u>Count II</u>
**(Declaratory Judgment of Invalidity of the '941 Patent)**

21.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-20 as if fully set forth herein.

22.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '941 patent.

23.    The claims of the '941 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

24.    Cobalt is entitled to a judicial declaration that the claims of the '941 patent are invalid.

**Count III**
**(Declaratory Judgment of Non-Infringement of the '590 Patent)**

25.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-24 as if fully set forth herein.

26.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '590 patent.

27.    The manufacture, use, sale, offer for sale, or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '590 patent.

28.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '590 patent.

**Count IV**
**(Declaratory Judgment of Invalidity of the '590 Patent)**

29.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-28 as if fully set forth herein.

30.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '590 patent.

31.    The claims of the '590 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

32.    Cobalt is entitled to a judicial declaration that the claims of the '590 patent are invalid.

22

**Count V**
**(Declaratory Judgment of Non-Infringement of the '726 Patent)**

33.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-32 as if fully set forth herein.

34.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '726 patent.

35.    The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '726 patent.

36.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '726 patent.

**Count VI**
**(Declaratory Judgment of Invalidity of the '726 Patent)**

37.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-36 as if fully set forth herein.

38.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '726 patent.

39.    The claims of the '726 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

40.    Cobalt is entitled to a judicial declaration that the claims of the '726 patent are invalid.

23

## Count VII
### (Declaratory Judgment of Non-Infringement of the '207 Patent)

41.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-40 as if fully set forth herein.

42.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '207 patent.

43.    The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '207 patent.

44.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '207 patent.

## Count VIII
### (Declaratory Judgment of Invalidity of the '207 Patent)

45.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-44 as if fully set forth herein.

46.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '207 patent.

47.    The claims of the '207 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

48.    Cobalt is entitled to a judicial declaration that the claims of the '207 patent are invalid.

24

## Count IX
### (Declaratory Judgment of Non-Infringement of the '329 Patent)

49.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-48 as if fully set forth herein.

50.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '329 patent.

51.    The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '329 patent.

52.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '329 patent.

## Count X
### (Declaratory Judgment of Invalidity of the '329 Patent)

53.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-52 as if fully set forth herein.

54.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '329 patent.

55.    The claims of the '329 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

56.    Cobalt is entitled to a judicial declaration that the claims of the '329 patent are invalid.

## Count XI
### (Declaratory Judgment of Non-Infringement of the '801 Patent)

57.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-56 as if fully set forth herein.

58.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '801 patent.

59.    The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '801 patent.

60.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '801 patent.

## Count XII
### (Declaratory Judgment of Invalidity of the '801 Patent)

61.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-60 as if fully set forth herein.

62.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '801 patent.

63.    The claims of the '801 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

64.    Cobalt is entitled to a judicial declaration that the claims of the '801 patent are invalid.

26

## Count XIII
### (Declaratory Judgment of Non-Infringement of the '294 Patent)

65.     Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-64 as if fully set forth herein.

66.     There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '294 patent.

67.     The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '294 patent.

68.     Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '294 patent.

## Count XIV
### (Declaratory Judgment of Invalidity of the '294 Patent)

69.     Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-68 as if fully set forth herein.

70.     There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '294 patent.

71.     The claims of the '294 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

72.     Cobalt is entitled to a judicial declaration that the claims of the '294 patent are invalid.

## Count XV
### (Declaratory Judgment of Non-Infringement of the '410 Patent)

73.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-72 as if fully set forth herein.

74.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding non-infringement of the '410 patent.

75.    The manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '410 patent.

76.    Cobalt is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, and/or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '410 patent.

## Count XVI
### (Declaratory Judgment of Invalidity of the '410 Patent)

77.    Cobalt re-asserts and re-alleges each of the foregoing paragraphs 1-76 as if fully set forth herein.

78.    There is an actual, substantial, and continuing justiciable case or controversy between Cobalt and Merck regarding the invalidity of the '410 patent.

79.    The claims of the '410 patent are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Patent Code.

80.    Cobalt is entitled to a judicial declaration that the claims of the '410 patent are invalid.

## Prayer for Relief

WHEREFORE, Cobalt respectfully prays for judgment in its favor and against Plaintiff:

(a)     Declaring that the manufacture, use, sale, offer for sale, or importation of the alendronate sodium tablets that are subject of Cobalt's ANDA No. 76-984 have not infringed, do not infringe, and would not, if marketed, infringe any valid and/or enforceable claim of the '941, '590, '726, '207, '329, '801, '294 and '410 patents;

(b)     Declaring that the claims of the '941, '590, '726, '207, '329, '801, '294 and '410 patents are invalid;

(c)     Ordering that Merck's Complaint be dismissed with prejudice and judgment entered in favor of Cobalt;

(e)     Declaring this case exceptional and awarding Cobalt its reasonable attorneys' fees and costs of these Counterclaims under 35 U.S.C. § 285; and

(f)     Awarding Cobalt such other and further relief as the Court may deem just and proper.

29

## JURY DEMAND

Cobalt hereby demands a trial by jury as to all issues so triable.

Dated: September 1, 2005.                                    Respectfully submitted,

                                                            COBALT PHARMACEUTICALS INC.

                                                            By

                                                            One of its attorneys

                                                            Conrad M. Shumadine (VSB #4325)
                                                            WILLCOX & SAVAGE, P.C.
                                                            One Commercial Place, Suite 1800
                                                            Norfolk, VA 23510
                                                            Tel: (757) 628-5525
                                                            Fax: (757) 628-5566
                                                            cshumadine@wilsav.com

Of Counsel:
William A. Rakoczy
Jane J. Jaang
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60610
Telephone: (312) 222-6301
Facsimile: (312) 222-6321
wrakoczy@rmmslegal.com

**Attorneys for Cobalt Pharmaceuticals Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2005, a true copy of the foregoing ANSWER,

AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF COBALT

PHARMACEUTICALS, INC. was mailed *via* overnight delivery to counsel for plaintiff as

follows:

Bert C. Reiser, Esq.
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004



# EXHIBIT   D

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1996 WL 190008
**(Cite as: Not Reported in F.Supp.)**

C
Not Reported in F.Supp., 1996 WL 190008
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
SAFT AMERICA, INC., Plaintiff,
v.
OVONIC BATTERY COMPANY, INC., and
Energy Conversion Devices, Inc., Defendants and
Counterplaintiffs,
v.
SAFT AMERICA, INC., Saft, S.A., GS-Saft,
Societe De Propriete Industrielle, and
Japan Storage Battery Company, Inc.
Counterdefendants.
**No. CIV. A. 95-430-SLR.**

March 25, 1996.

Bruce M. Stargatt , Josy W. Ingersoll , and John W.
Shaw , of Young, Conaway, Stargatt & Taylor,
Wilmington, Delaware, for Counterplaintiffs. Of
Counsel: Chester T. Kamin , Esquire, David J.
Bradford , Terri L. Mascherin , and Paul T.
Whitcombe , of Jenner & Block , Chicago, Illinois;
Lawrence G. Norris , of Rothwell, Figg, Ernst &
Kurz , Washington, D.C.; and Marvin S. Siskind ,
Vice President/Patent Counsel, Energy Conversion
Devices, Inc., Troy, Michigan.
Thomas R. Hunt, Jr. , Jack B. Blumenfeld , and
Karen Jacobs Louden , of Morris, Nichols, Arsht &
Tunnell , Attorneys for Counterdefendants Societe
de Services de Propriete Industrielle, Saft America,
Inc. , and Saft, S.A. Of Counsel: Neil B. Siegel ,
Esquire, David J. Cushing , Esquire, and Mark
Boland , of Sughrue, Mion, Zinn, MacPeak & Seas,
Washington, D.C.

MEMORANDUM OPINION

ROBINSON, District Judge.

I. INTRODUCTION

*1 SAFT America, Inc. filed this action against
Ovonic Battery Company, Inc. ("Ovonic") and
Energy Conversion Devices, Inc. ("ECD") on
September 8, 1995. SAFT America seeks a
declaration that defendants' patent on a certain
nickel metal hydride battery technology is invalid
and that SAFT America has not infringed. In their
answer and counterclaim, defendants sought to add
several counterdefendants, including the Societe de
Services de Propriete Industrielle ("SOSPI"), a
French corporation. SOSPI, like SAFT America and
SAFT, S.A. ("SAFT"), is a subsidiary of the French
conglomerate Alcatel Alsthom.

Currently before the court is SOSPI's motion to
dismiss the counterclaims against it for lack of
personal jurisdiction. SOSPI contends that none of
the provisions of Delaware's long arm statute apply
to it, and that it has not had sufficient contacts with
the State to permit the exercise of personal
jurisdiction over it by this court. Counterplaintiffs
assert that jurisdiction may be premised on SOSPI's
actions as an agent of SAFT America and on
SOSPI's independent tortious actions within the
State. Alternatively, counterplaintiffs argue that
because the jurisdictional issue is inextricably
entwined with the merits of the case, the court
should reserve the issue for trial. For the reasons
explained below, counterdefendant's motion will be
granted.

II. BACKGROUND

For the purposes of this motion, the court must view
the facts in the light most favorable to the
nonmoving party. The court, therefore, finds the
following facts relevant to this inquiry:

In 1989, representatives of SAFT, Ovonic, and
ECD held discussions in Troy, Michigan for the
purpose of exploring a possible business
relationship. (D.I. 51 at Ex. A) In the course of
those discussions, Ovonic disclosed confidential

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1996 WL 190008
**(Cite as: Not Reported in F.Supp.)**

business and technical information pursuant to a confidentiality agreement it had formed with SAFT. Mr. M. Dalsace, Director of SOSPI, participated actively in these meetings as SAFT's patent agent. (D.I. 51 at Ex. A) A representative of SAFT confirmed that SOSPI, as a sister company and patent agent of SAFT, would be bound by the confidentiality agreement. (D.I. 51 at Ex. A)

Counterplaintiffs believe that SAFT, with SOSPI's help, improperly utilized Ovonic's confidential information to further its own research and attack Ovonic's patents. (D.I. 12 at ¶ 24) According to counterplaintiffs, SOSPI prepared nullity actions which SAFT filed against Ovonic patents in Germany and France (D.I. 12 at ¶ 27); served as SAFT's patent agent on an application before the European Patent Office using Ovonic's confidential information (D.I. 12 at ¶ 25); and filed an opposition to counterplaintiff ECD's application for a patent. (D.I. 12 at ¶ 26) According to counterplaintiffs' affidavits, it also "appears that this action to attack the validity of Ovonic's U.S. Patent No. 4,623,597 was prepared and filed with the participation of and/or at the direction of SOSPI, and with the benefit of confidential information that Saft and SOSPI agreed not to use for these purposes. " (D.I. 51 at Ex. A) Counterplaintiffs support this allegation by noting SOSPI's participation, on SAFT's behalf, in settlement negotiations relating to the present case which took place in Paris before SOSPI was named as a counterdefendant. (D.I. 51 at Ex. B)

**\*2** Counterplaintiffs do not contend that any of SOSPI's alleged activities took place in Delaware. SOSPI asserts, and counterplaintiffs do not dispute, that SOSPI does not have any offices, employees, real estate or other assets in Delaware, nor has it ever derived revenues from or consumed things or services in the State.

### III. DISCUSSION

SOSPI contends that this court lacks personal jurisdiction over it and accordingly moves for dismissal under Fed. R. Civ. P. 12(b)(2). To defeat a 12(b)(2) motion to dismiss, counterplaintiffs bear

the burden of demonstrating through sworn affidavits or other competent evidence that jurisdiction exists. *Patterson v. FBI,* 893 F.2d 595, 603-04 (3d Cir.), *cert. denied,* 498 U.S. 82 (1990), *citing Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir. 1984). Once counterplaintiffs have made out a prima facie case, the burden passes to counterdefendant to " present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476, 483 (3d Cir. 1993), *citing Carteret Sav. Bank F.A. v. Shushan,* 954 F.2d 141, 150 (3d Cir.), *cert. denied,* 113 S. Ct. 61 (1992) (citations omitted). As this court has held, " personal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction." *Blue Ball Properties, Inc. v. McClain,* 658 F. Supp. 1310, 1316 (D. Del. 1987).

This court may assert personal jurisdiction to the extent permitted under the Delaware long arm statute, Delaware Code Ann. Title 10, Section 3104 (1978) , *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.), *cert. denied,* 474 U.S. 980 (1985), and the due process clause of the Fourteenth Amendment. *Jeffreys v. Exten,* 784 F. Supp. 146 (D. Del. 1992). In determining whether jurisdiction lies the court must apply a two step analysis: "First, [the] court must determine whether the alleged conduct of a defendant comes within one of the provisions of the long arm statute .... [T] hen the court must proceed to consider whether the exercise of jurisdiction over a particular defendant violates due process interests." *Blue Ball Properties,* 658 F. Supp. at 1315.

#### A. Delaware Long Arm Statute

Counterplaintiffs allege that personal jurisdiction over counterdefendant is proper under Section 3104(c)(3). This section provides that "a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent ... [c]auses tortious injury in the State by an act or omission in the State." 10 Del. C. § 3104(c)(3). As this court has held, this section is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3

Not Reported in F.Supp., 1996 WL 190008
(Cite as: Not Reported in F.Supp.)

to be construed liberally, favoring the exercise of jurisdiction "to the 'maximum perimeters of the due process clause.'" *Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies,* 833 F. Supp. 437 (D. Del. 1993), *quoting Transportes Aereos de Angola v. Ronair, Inc.,* 544 F. Supp. 858, 864 (D. Del. 1982).

Jurisdiction under § 3104(c)(3) requires that the tortious act itself, and not merely the resulting harm, occur in Delaware. *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F. Supp. 1458, 1466 (D. Del. 1991). This interpretation is necessary to distinguish § 3104(c)(3) from § 3104(c)(4), which provides for jurisdiction over one who

*3 [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State ...

This latter section, known as a grant of "general jurisdiction," clearly does not require a nexus between the cause of action and a defendant's activities in the State, but does require a higher level of regular contacts in the State than do the other "specific jurisdiction" subsections. To give this subsection any meaning, the court must read § 3104(c)(3) as requiring a connection between the alleged tortious activity and counterdefendant's presence in Delaware.

### 1. Tortious Acts in Delaware

It is undisputed that SOSPI has not had any physical presence in the State of Delaware. Counterplaintiffs contend, however, that SOSPI's participation in the filing of this lawsuit forms a sufficient basis for jurisdiction under this section. As the basis for this conclusion, counterplaintiffs rely on *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.,* 833 F. Supp. 437 (D. Del. 1993) . In *Mobil Oil,* the court exercised jurisdiction over an individual defendant who had authorized, in his official capacity, the corporate act that was the subject of plaintiff's suit. The individual defendant in that case had been physically present in Delaware

only once, but his presence in the State was related to the matter that gave rise to the suit. Jurisdiction was held proper despite the fact that the defendant was not physically present in Delaware when he authorized the corporate act in question. *Id.* at 444-45.

In the case at bar, however, there are two crucial distinctions. First, counterplaintiffs claim only that SOSPI assisted SAFT in filing this case, not that it authorized it. Jurisdiction was proper in *Mobil Oil* only because the defendant in that case had the power to cause the corporate entity to act. *Id.* Counterplaintiffs claim no such authority over SAFT on the part of SOSPI. Second, the defendant found subject to jurisdiction in *Mobil Oil* had some actual contact with the forum state. The court concluded in that case that "[defendant's] authorization of the filing of this ... action on behalf of Mobil and his presence in Delaware as a deposition witness in connection with the lawsuit together create sufficient contacts with Delaware to support personal jurisdiction under subsection (c)(3)." *Id.* at 444 (emphasis added). In this case, the element of actual contact with the State is missing. Therefore, this court cannot assert personal jurisdiction over SOSPI based solely on its alleged assistance in filing this suit.

### 2. Agency Theory

Counterplaintiffs contend that because SOSPI acted as an agent of SAFT America, the latter's activities can be imputed to the former. Thus, SOSPI, through its principal SAFT America, has committed a tortious act in the State of Delaware. It is true, as counterplaintiffs point out, that jurisdiction may be premised on the actions of an agent, and that an agency relationship may exist between two subsidiaries of a single parent corporation. *Applied Biosystems,* 772 F. Supp. at 1463. To impute SAFT America's actions to SOSPI, however, counterplaintiffs must show that SOSPI was the principal, and that it exerted control over SAFT America, its agent. As the court stated in *Applied Biosystems:*

*4 The factors relevant to this determination include the extent of overlap of officers and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1996 WL 190008
**(Cite as: Not Reported in F.Supp.)**

directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business.
*Id.* By this standard, counterplaintiffs have failed to allege a sufficient factual basis to establish an agency relationship. In fact, they allege not that SAFT was SOSPI's agent, but that SOSPI was SAFT's agent. As the agent, SOSPI could not have directed the alleged tortious acts, and the acts of the supposed principal cannot be imputed to it. *Id.* at 1467. The court, therefore, cannot take jurisdiction over counterdefendant based on a theory of agency.

### 3. Conspiracy Theory

Counterplaintiffs also maintain that SAFT America's actions may be imputed to SOSPI because both were members of a conspiracy whose goal was to undermine counterplaintiffs' patents. Under Delaware law, the actions of a conspirator may be attributed to a co-conspirator for the purposes of asserting personal jurisdiction. *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 481-82 (Del. 1992). To assert jurisdiction under this theory, counterplaintiffs must establish:

(1) a conspiracy ... existed; (2) the [counter]defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the [counter]defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Id.* at 482. *Accord Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 863 F. Supp. 186, 189 (D. Del. 1993). In the case at bar, only one act in furtherance of the alleged conspiracy occurred in Delaware: the filing of this lawsuit. With respect to SOSPI's participation in the filing of this lawsuit, counterplaintiffs allege only that SAFT America consulted with SOSPI before filing, and that a representative of SOSPI attended a meeting in Paris to discuss settlement. These allegations, standing

alone, do not establish a basis for concluding that SOSPI participated in a conspiracy and, therefore, do not form a sufficient basis for asserting jurisdiction under a theory of conspiracy.

### B. Due Process

Even if jurisdiction over counterdefendant were found to exist under the Delaware Long Arm Statute, the requirements of the Due Process Clause of the Constitution would prevent this court from asserting jurisdiction. The Supreme Court of the United States set forth the relevant due process requirements in *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945):

[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend " traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457 ....

**\*5** In *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) , the Supreme Court noted further:

[I]t is essential that in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

In addition, the "defendant's conduct and connection with the forum State [[[must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Burger King Corp.,* 471 U.S. at 472 (citations omitted). In a case such as the present,

[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, th[e] "fair warning

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5

Not Reported in F.Supp., 1996 WL 190008
**(Cite as: Not Reported in F.Supp.)**

" requirement is satisfied if the defendant has "
purposefully directed" his activities at residents
of the forum, ... and the litigation results from
alleged injuries that "arise out of or relate to
those activities ...."
*Id.* at 472-73 (citations omitted). It is undisputed in
this case that counterdefendant has had no contact
with the State of Delaware. SOSPI maintains no
offices, owns no property, has no employees, and
derives no revenue from the State of Delaware.
Counterplaintiffs have not alleged any act of
infringement committed by SOSPI in Delaware.
Counterplaintiffs have not asserted that SOSPI
directed the filing of this lawsuit, or that it
participated in the decision to do so as a
co-conspirator. Rather, counterplaintiffs assert only
that SOSPI assisted SAFT America in the
preparation of the suit. Such allegations fall short of
establishing that SOSPI purposely availed itself of
the privileges of conducting activities in Delaware.
Under these circumstances, counterdefendant
SOSPI could not reasonably have anticipated being
haled into court here, and to do so would violate the
notion of fair play enshrined in the Due Process
Clause of the Constitution.

### IV. CONCLUSION

For the forgoing reasons, counterdefendant SOSPI's
motion to dismiss for lack of personal jurisdiction
will be granted. An order consistent with this
opinion shall issue.

D.Del.,1996.
SAFT America, Inc. v. Ovonic Battery Co., Inc.
Not Reported in F.Supp., 1996 WL 190008

Briefs and Other Related Documents (Back to top)

• 1:95cv00430 (Docket) (Jun. 30, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.